### BASSEY *v.* CITY OF HUNTINGTON WOODS.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—PRESUMPTION OF CONSTITUTIONALITY.
   A municipal zoning ordinance is presumed constitutional.

2. SAME—ZONING ORDINANCES—BURDEN OF PROVING INVALIDITY.
   A party assailing a municipal zoning ordinance as having no substantial relation to public health, morals, safety or general welfare must make an affirmative showing as to its invalidity.

3. SAME—ZONING ORDINANCES—BENEFICIAL USE OF PROPERTY.
   A municipal zoning ordinance which prevents a property owner from making any beneficial use of his property is both unreasonable and confiscatory.

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  58 Am Jur, Zoning §§ 16, 256.
[2]  58 Am Jur, Zoning § 256.
[3, 5]  58 Am Jur, Zoning §§ 21, 22.
[4]  58 Am Jur, Zoning § 26.
[6]  20 Am Jur, Evidence § 124.
[7]  58 Am Jur, Zoning § 51.
[7]  Power to establish building line along street.   28 ALR 314; 44 ALR 1377; 53 ALR 1222.

4. SAME—ZONING ORDINANCES—PUBLIC WELFARE.

The paramount public welfare as evidenced by a municipal zoning ordinance cannot be promoted at the expense of the property owner by regulations which are capricious or arbitrary in nature and the use imposed by the ordinance must be a feasible use.

5. SAME—ZONING ORDINANCES—SINGLE-FAMILY RESIDENCE.

A municipal zoning ordinance restricting lots to use for single-family residences held, unreasonable, void and unconstitutional, under record showing that street upon which the lots abut is a main thoroughfare carrying a heavy volume of traffic and that lots are unsalable for such purposes.

6. EVIDENCE—JUDICIAL NOTICE—HEAVY TRAFFIC ON MAIN THOROUGHFARE.

A trial court may properly take judicial notice of the heavy volume of traffic on a main thoroughfare running through the county to a city within the county, as courts are not required to close their eyes to facts obvious to the rest of mankind.

7. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—SETBACK LINES.

Municipal zoning ordinance restricting use of 20-foot lot to 2-family residences with setback lines of 8 feet on each side held, unreasonable on its face.

Appeal from Oakland; Doty (Frank L.), J. Submitted January 10, 1956. (Docket No. 59, Calendar No. 46,582.) Decided March 1, 1956.

Bill by Charles I. Bassey, Maurice A. Haupert and others against the City of Huntington Woods, a municipal corporation, David R. Calhoun, its mayor, and other officials to have zoning ordinance declared invalid as to their property. Decree for plaintiffs. Defendants appeal. Affirmed.

*Howlett, Hartman & Beier* (*William B. Hartman,* of counsel), for plaintiffs.

*H. Eugene Field,* for defendants.

*Manikoff & Munde* (*Raymond D. Munde,* of counsel), for defendant Calhoun.

SMITH, J.   It is asserted in this case that the zoning ordinance (No 130) of the city of Huntington Woods is, as to plaintiffs' property, unreasonable, discriminatory and unconstitutional. The trial judge so held. The defendants have taken a general appeal.

The properties here involved (with one exception) are lots fronting on Woodward avenue in the Huntington Woods subdivision, city of Huntington Woods, Michigan. The remaining lot, lot 87, is located on the south side of Eleven Mile road west of Woodward avenue. The Woodward lots are zoned for single-family use. Lot 87 is zoned for 2-family residential use. At the point under consideration, Woodward avenue is the dividing line between the city of Royal Oak on the east, and defendant city of Huntington Woods on the west. On the Royal Oak side the property is zoned for single-family residential use and a church, parish house, and 2 residences have been erected thereon. On the Huntington Woods side, the lots involved are all vacant save 1, on which plaintiff Haupert has built a residence. At the rear of Woodward lots, and facing another avenue, are a large number of substantial homes. The area involved is approximately 3 blocks in length, north of which is business frontage and south of which are multiple dwellings.

It is the contention of the plaintiffs that the Woodward avenue property is entirely unsuitable for single-family residential use. Since the recording of the plat, in 1917, only 1 single residence has been built upon the lots in question. Its owner, Maurice A. Haupert, is one of the plaintiffs in this action. He testified that the traffic noises are continuous, "noise all the time," and "a lot of company off Woodward avenue. Almost every night somebody stops in with trouble—all kinds of people—all hours of the night." Another property owner testified that he had decided

not to build his home at this location because, in part, of the noise. "There is just a drumming, constant hum of traffic—there is no end to it." In addition, 2 real-estate brokers testified as to the unsuitability of the Woodward lots for private dwellings. One stated that in his opinion the lots were not usable for single-residence purposes and that in 30 minutes at this location he had counted 1,818 vehicles traveling north. The other, Bruce Annett, then president-elect of the Michigan Real Estate Association, testified, in part, as follows:

"In my opinion, I don't believe the vacant lots. referred to here on Woodward avenue would be salable for single-residence purposes. Of course, there is always the possibility of somebody buying something, but to all intents and purposes I would say no. It would be very difficult to sell.

"In my opinion, if the requirement that there be no use made of the property but single-residence purposes is continued, the result would be that it will continue in its present state of being undeveloped, grown up to weeds and actually an eyesore to the surrounding properties."

The defendants offered no testimony (a stipulation of facts having been agreed upon) and the trial court held for plaintiffs, as before stated. Upon this appeal the defendants urge that plaintiffs' proofs have not overcome the presumption of validity attaching to the ordinance and that the court took improper judicial notice.

There is no doubt, of course, as defendants urge, that a zoning ordinance is presumed constitutional and that plaintiffs must make affirmative showing that the regulation has no substantial relation to public health, morals, safety or general welfare. *Hammond* v. *Bloomfield Hills Building Inspector,* 331 Mich 551. On the other hand, an ordinance that prevents the property owner from making any bene-

ficial use of his property is both unreasonable and confiscatory. The paramount public welfare cannot be promoted at the expense of the property owner by regulations which are capricious or arbitrary in nature. The use imposed by the ordinance must be feasible use. As we said in *Oschin* v. *Township of Redford,* 315 Mich 359, 363:

"It is practically impossible to use the lands in question for residential purposes. We find that the zoning ordinances as applied to the property in question are unreasonable and confiscatory, and therefore illegal."

The situation presented to us in *Long* v. *City of Highland Park,* 329 Mich 146, 151, 152, is also in point, concerning which we held:

"The record is plain that there is no market for said property in Highland Park fronting on Woodward avenue still zoned as 'R1' for use for residential purposes."

Upon the record made we agree with the trial court that the Woodward avenue lots are not suitable for single-family residence, and that the ordinance, as applied to plaintiffs' property, is unreasonable, void, and unconstitutional.

There is no merit in defendants' allegation of error respecting the judicial notice taken by the trial court concerning the heavy volume of traffic from Detroit to Pontiac on Woodward avenue. Courts are not required to close their eyes to facts obvious to the rest of mankind. We note, moreover, the testimony of witness Smith as to the traffic count made by him, and the stipulation that Woodward avenue is a "main thoroughfare running northerly" from the Detroit river to Pontiac. The case of *Cleveland* v. *Newsom,* 45 Mich 62, is not germane.

As to lot 87, on Eleven Mile road, the ordinance is equally unreasonable. This lot, near 2 gasoline sta-

tions, is 20 feet in width and is zoned for 2-family dwellings. The setback (from side lines) required is 8 feet per side, leaving a theoretical 4-foot width for the dwelling in question. Such a restriction is unreasonable on its face.

·Decree affirmed. Costs to appellees.

DETHMERS, C. J., and SHARPE, REID, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.